Matter of New York Civ. Liberties Union v City of Rochester (2025 NY Slip Op 01010)

Matter of New York Civ. Liberties Union v City of Rochester

2025 NY Slip Op 01010

Decided on February 20, 2025

Court of Appeals

Cannataro, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 20, 2025

No. 13 

[*1]In the Matter of New York Civil Liberties Union, Respondent,
v
City of Rochester et al., Appellants.

Patrick Beath, for appellants.
Robert Hodgson, for respondent.
Association of the Bar of the City of New York, Reporters Committee for Freedom of the Press et al., NAACP Legal Defense and Educational Fund, Inc., amici curiae.

CANNATARO, J.

:
Until 2020, disciplinary records of law enforcement officers were categorically exempted from the public disclosure requirements of the Freedom of Information Law (FOIL) by statute (see former Civil Rights Law § 50-a; Public Officers Law § 87 [2] [a]).
In June of that year, in the wake of the national outcry over the killing of George Floyd in Minnesota, and rising public concern that law enforcement agencies were not appropriately handling allegations of officer misconduct, the legislature repealed Civil Rights Law § 50-a and amended FOIL to specifically address the disclosure of law enforcement disciplinary records (see L 2020, ch 96, amdg Public Officers Law §§ 86, 87, 89). The question on this appeal is whether FOIL's personal privacy exemption, which was left intact by the 2020 amendments, provides a basis for agencies to categorically withhold all disciplinary records relating to complaints against law enforcement officers that were not deemed substantiated [FN1]. The answer is no.
Shortly after the 2020 amendments went into effect, petitioner New York Civil Liberties Union submitted a series of FOIL requests to respondents, the City of Rochester and the Rochester Police Department. The requested documents included records of all civilian complaints against Rochester police officers dating back to January 2000, irrespective of whether those complaints were ultimately deemed substantiated or resulted in disciplinary action against the officers [FN2]. When respondents did not promptly produce the requested documents, petitioner commenced this CPLR article 78 proceeding to compel disclosure. Supreme Court ordered production of many of the records but determined that respondents were entitled to withhold all records relating to complaints that were not deemed substantiated, pursuant to the personal privacy exemption contained in Public Officers Law § 87 (2) (b). Petitioner appealed and the Appellate Division modified, holding that the personal privacy exemption did not authorize respondents to categorically withhold all such records. The Appellate Division instead directed respondents to review the requested records and determine whether there is a particularized and specific justification to redact or withhold each record on personal privacy grounds (see 210 AD3d 1400 [4th Dept 2022]). This Court granted respondents' motion for leave to appeal (39 NY3d 915 [2023]), and we now affirm.
"To promote open government and public accountability, FOIL imposes a broad duty on government agencies to make their records available to the public" (Matter of Abdur-Rashid v New York City Police Dept., 31 NY3d 217, 224 [2018]; Matter of Gould v New York City Police Dept., 89 NY2d 267, 274 [1996]; see Public Officers Law § 84). The statute is based on the principle that "the public is vested with an inherent right to know and that official secrecy is anathematic to our form of government" (Matter of Fink v Lefkowitz, 47 NY2d 567, 571 [1979]). Under FOIL, "[a]ll records are presumptively available for public inspection and copying, unless the agency satisfies its burden of demonstrating that 'the material requested falls squarely within the ambit of one of [the] statutory exemptions,' " which must be "narrowly interpreted" (Matter of Abdur-Rashid, 31 NY3d at 225, quoting Matter of Fink, 47 NY2d at 571; see Matter of Appellate Advocates v New York State Dept. of Corr. & Community Supervision, 40 NY3d 547, 551 [2023]).
FOIL's personal privacy exemption permits an agency to withhold from public access any record that "if disclosed would constitute an unwarranted invasion of personal privacy" (Public Officers Law § 87 [2] [b]). We agree with respondents that FOIL, as amended in conjunction with the repeal of Civil Rights Law § 50-a, does not deny law enforcement officers the benefit of this exemption. However, the Appellate Division correctly concluded—consistent with uniform appellate precedent—that there is no categorical or blanket personal privacy exemption for records relating to complaints against law enforcement officers that are not deemed substantiated (210 AD3d at 1401; accord Matter of New York Civ. Liberties Union v New York City Dept. of Corr., 213 AD3d 530, 530-531 [1st Dept 2023], lv denied 40 NY3d 909 [2024]; Matter of Newsday, LLC v Nassau County Police Dept., 222 AD3d 85, 90-92 [2d Dept 2023]; Matter of New York Civ. Liberties Union v City of Syracuse, 210 AD3d 1401, 1403-1405 [4th Dept 2022]; see also Matter of Thomas v New York City Dept. of Educ., 103 AD3d 495, 498 [1st Dept 2013]).
As the scope of Public Officers Law § 87 (2) (b) is a question of statutory interpretation, " '[o]ur primary consideration is to ascertain and give effect to the intention of the [l]egislature' " (see CIT Bank N.A. v Schiffman, 36 NY3d 550, 559 [2021], quoting Samiento v World Yacht Inc., 10 NY3d 70, 77-78 [2008]). "Because the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, with due consideration given to the statutory purpose and history, including the objectives the legislature sought to achieve through its enactment" (id. [internal quotation marks and citation omitted]). Courts interpreting the scope of a FOIL exemption should also keep in mind that "blanket exemptions for particular types of documents are inimical to FOIL's policy of open government" (Matter of Gould, 89 NY2d at 275).
It is evident from the text and history of the 2020 amendments that their purpose was to bring greater transparency to the law enforcement disciplinary process, including how complaints of officer misconduct are handled. To effectuate that objective, the legislature added to FOIL a definition of "[l]aw enforcement disciplinary [*2]records" that expressly encompasses "complaints" levied against officers "in furtherance of a law enforcement disciplinary proceeding" (see Public Officers Law § 86 [6] [a]). The definition imposes no limitation based on the outcome or disposition of such proceeding [FN3]. Another contemporaneous amendment requires agencies disclosing law enforcement disciplinary records to redact specific categories of sensitive personal information about officers and their families, including medical histories, home addresses, and cell phone numbers, but again makes no mention of allegations or complaints that are not deemed substantiated (see id. § 89 [2-b]). The legislature similarly declined to add such complaints to the nonexclusive list of examples in Public Officers Law § 89 (2) (b) of disclosures that may constitute "[a]n unwarranted invasion of personal privacy." And, as was the case before the 2020 amendments, Public Officers Law § 87 (2) continues to provide that "[a] denial of access shall not be based solely on the category or type of such record." Collectively, these provisions controvert respondents' argument that the legislature intended to broadly exempt from disclosure all records relating to complaints that are not deemed substantiated (see Matter of Newsday, LLC, 222 AD3d at 91).
Rather than withhold all such records, Public Officers Law § 87 (2) requires an agency to evaluate each record individually and determine whether "a particularized and specific justification" exists for denying access on the ground that disclosing all or part of the record would constitute an unwarranted invasion of privacy (see Public Officers Law § 87 [2] [b]; Matter of Gould, 89 NY2d at 275). Where redactions would prevent such an invasion and can be made without unreasonable difficulty, the agency must disclose the record with those necessary redactions (see Matter of Schenectady County Socy. for the Prevention of Cruelty to Animals, Inc. v Mills, 18 NY3d 42, 45 [2011]; Matter of Data Tree, LLC v Romaine, 9 NY3d 454, 464 [2007]). The Appellate Division properly directed respondents to undertake this process, subject to further judicial review (see 210 AD3d at 1401).
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Order affirmed, with costs. Opinion by Judge Cannataro. Chief Judge Wilson and Judges Rivera, Garcia, Singas, Troutman and Singh concur. Judge Halligan took no part.
Decided February 20, 2025

Footnotes

Footnote 1: FOIL does not define or use the term "substantiated." For purposes of this appeal, we deem "substantiated" to mean supported by "sufficient credible evidence to believe that the subject officer committed the alleged act without legal justification" (see Civilian Complaint Review Board, Case Outcomes, https://www .nyc. gov /site/ccrb/ investigations /case-outcomes.page [last accessed Feb. 10, 2025]; see also People v Randolph, 69 Misc 3d 770, 772 [Sup Ct, Suffolk County 2020] ["a case is 'substantiated' where it is determined that the facts clearly support the allegation"]).

Footnote 2: Petitioner explained that its requests were motivated by concerns regarding the death of Daniel Prude, a Black man who reportedly died of asphyxiation after being restrained by Rochester police officers. 

Footnote 3: The term "[l]aw enforcement disciplinary proceeding" is defined as "the commencement of any investigation and any subsequent hearing or disciplinary action conducted by a law enforcement agency" (Public Officers Law § 86 [7]). Contrary to respondents' contention, the phrase "and any subsequent hearing or disciplinary action" does not require that the disciplinary process have reached the hearing or disposition stage before a complaint will qualify as a law enforcement disciplinary record. By the statute's plain meaning, a complaint qualifies under that definition as long as it was created "in furtherance of" the disciplinary process (see id. § 86 [6]; Black's Law Dictionary [12th ed. 2024], furtherance ["The act or process of facilitating the progress of something or of making it more likely to occur; promotion or advancement"]).